Filed 8/30/22 P. v. Ayala CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　Plaintiff and Respondent,<br><br>　v.<br><br>JUAN CARLOS SANCHEZ AYALA<br><br>　Defendant and Appellant. | B311702<br><br>Los Angeles County<br>Super. Ct. No. BA121247 |
| In re<br><br>JUAN CARLOS SANCHEZ AYALA<br><br>　on Habeas Corpus. | B315206<br><br>Los Angeles County<br>Super. Ct. No. BA121247 |

　　ORIGINAL PROCEEDINGS on petition for writ of habeas corpus, Robert D. Mackey, Judge. Petition granted with directions.

APPEAL from an order of the Superior Court of Los Angeles County, Craig J. Mitchell, Judge. Reversed and remanded with directions.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant, Appellant, and Petitioner.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, David E. Madeo and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

---

## INTRODUCTION

In 1996, a jury convicted Juan Carlos Sanchez Ayala of first degree murder and found a principal was armed with a gun during the crime. The court sentenced Ayala to 26 years to life in prison. A different panel of this division affirmed Ayala's conviction in 1997. (*People v. Ayala* (Oct. 29, 1997, B102520) [nonpub. opn.].)

In 2019, Ayala filed a petition to vacate his conviction and reduce his sentence under former Penal Code[1] section 1170.95 (now § 1172.6).[2] Ayala argued he was convicted of murder under either the natural and probable consequences doctrine or the felony murder rule and couldn't now be convicted of the same crime under sections 188 and 189, as those statutes were

---

[1] All undesignated statutory sections are to the Penal Code.

[2] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change to the text (Stats. 2022, ch. 58, § 10). For convenience, we refer to the former statute number throughout this opinion.

amended by Senate Bill No. 1437 (S.B. 1437) (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1015, § 2). The court denied Ayala's resentencing petition without issuing an order to show cause, finding the jury convicted Ayala of murder under a direct aiding and abetting theory, or, alternatively, that Ayala was a major participant in the underlying murder and acted with reckless indifference to human life. Ayala appealed from the order denying his resentencing petition.

While his appeal was pending, Ayala filed in this Court a petition for writ of habeas corpus, seeking reduction of his murder conviction from first to second degree under *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*), which invalidated the natural and probable consequences doctrine as a means to establish culpability for first degree murder. We issued an order to show cause why Ayala's habeas petition should not be granted and informed the parties we would hear and consider the petition at the same time as Ayala's appeal. In this consolidated opinion, we decide Ayala's appeal from the order denying resentencing and his petition for writ of habeas corpus.

As for Ayala's appeal, the parties agree that he made a prima facie showing for relief under section 1170.95 and that the court erred in denying his resentencing petition without first issuing an order to show cause and holding an evidentiary hearing. The People oppose Ayala's habeas petition, however. While they don't dispute the court at Ayala's trial committed instructional error under *Chiu*, the People argue any error was harmless beyond a reasonable doubt because overwhelming evidence supports a finding that Ayala was a direct aider and abettor of murder.

3

We grant Ayala's habeas petition, concluding the *Chiu* error was not harmless beyond a reasonable doubt. We also agree with the parties that the court erred when it denied Ayala's resentencing petition. We therefore reverse Ayala's murder conviction, reverse the order denying his resentencing petition, and remand the matter for further proceedings.

## FACTUAL BACKGROUND

In September 1995, Ayala was a member of the Hollywood Locos gang, a subset of the Mara Salvatrucha gang. One morning that month, around 2:30 a.m., Ayala and two fellow Hollywood Locos members—Gustavo Aguirre and Jaime Castillo—entered territory controlled by the Plantone gang, one of Mara Salvatrucha's rivals.[3]

Ayala, Castillo, and Aguirre, who were all dressed similarly, approached the front porch of an apartment building where Michael Muse and Randy Price were drinking beer and smoking cigarettes. Ayala and Aguirre stood about 10 feet from the porch, while Castillo approached Muse and Price. Castillo asked for a cigarette, and Aguirre asked for a beer. Price told Castillo he only had a half-smoked cigarette and signaled that he didn't have any more beer. Although it appeared Ayala and Aguirre were keeping watch, Price didn't observe Ayala say or do anything while standing near the gate.

Castillo then stated that he was from "East Side Plantone." When Muse replied that he was from "West Side Plantone,"

---

[3] According to the People's gang expert, members of one gang will sometimes enter a rival gang's territory to start a "conflict" with members of the rival gang. These conflicts often end in violence.

Castillo drew a handgun and shot Muse three times, killing him. Another shot missed Muse and struck a door behind him. Price started running away but fell. Castillo followed Price and held the gun to his head, but Castillo didn't pull the trigger. Price fled.

After the shooting, Ayala returned to the apartment where he sometimes lived with another Hollywood Locos member, Leo V. Ayala told Leo that he (Ayala) had "blasted a Plantone." Ayala hid the gun that Castillo used to shoot Muse in Leo's closet.

Ayala testified at trial. He denied participating in the murder or otherwise being with Castillo and Aguirre when Muse was shot. Instead, Ayala claimed, he was at his girlfriend's house. Ayala also denied taking a gun to Leo's apartment after the shooting.

## PROCEDURAL BACKGROUND

### 1. The Trial and Original Appeal

The People charged Ayala with one count of murder and one count of attempted murder, and they alleged that a principal used a firearm during the offenses.

At trial, the court (Judge Mackey) instructed the jury on the natural and probable consequences doctrine and direct aiding and abetting principles as means of finding Ayala guilty of first and second degree murder. During closing argument, the prosecutor argued the jury could convict Ayala of first degree murder if it found he directly aided and abetted Muse's murder or if it found he intended only to aid and abet an assault, the natural and probable consequence of which was murder.

The jury found Ayala guilty of first degree murder and not guilty of attempted murder. The jury also found a principal used a firearm during the murder. The court sentenced Ayala to 26

5

years to life in prison. A different panel of this division affirmed Ayala's conviction on direct appeal in an unpublished opinion. (*People v. Ayala, supra*, B102520.)

## 2.    The Resentencing Petition

In January 2019, Ayala filed a resentencing petition under section 1170.95, asserting he was convicted of murder under the natural and probable consequences doctrine or the felony murder rule and could not currently be convicted of murder under sections 188 and 189, as those statutes were amended by S.B. 1437. The court (Judge Mitchell) appointed counsel for Ayala.[4] The People opposed Ayala's petition, and Ayala filed a reply.

In March 2021, the court held a hearing on Ayala's resentencing petition. The court denied Ayala's resentencing petition without issuing an order to show cause or allowing the parties to present evidence. According to the court, the People presented strong evidence at trial showing Ayala acted with an intent to kill. The court also concluded the jury necessarily found Ayala shared "the killer's intent to kill" when it convicted him of first degree murder. Alternatively, the court found Ayala was ineligible for relief because the evidence showed he was a major participant in the murder and acted with reckless disregard for human life.

Ayala appealed from the order denying his resentencing petition.

---

[4] In November 2020, after the court denied his motion brought under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*), Ayala chose to represent himself.

### 3.    The Habeas Petition

After filing his appeal, Ayala filed a petition for a writ of habeas corpus in this Court. In his petition, Ayala asserts his murder conviction is invalid under *Chiu* because the jury was instructed it could find him guilty of first degree murder under a natural and probable consequences theory and nothing in the record confirms beyond a reasonable doubt that the jury relied on a legally valid theory.

We issued an order to show cause why Ayala's habeas petition should not be granted and informed the parties that we would consider Ayala's petition at the same time as his appeal.

## DISCUSSION

### 1.    Ayala's Habeas Petition (B315206)

In his habeas petition, Ayala asserts the court committed prejudicial error when it instructed the jury at his trial that it could convict him of first degree murder under the natural and probable consequences doctrine. While the People agree the court's instructions were erroneous, they argue any error was harmless because overwhelming evidence establishes the jury convicted Ayala of murder under a legally valid theory of culpability. For the reasons discussed below, we agree with Ayala and grant his habeas petition.

#### 1.1.   Relevant Proceedings

At Ayala's trial, the court (Judge Mackey) instructed the jury on the natural and probable consequences doctrine and direct aiding and abetting principles.

With respect to the natural and probable consequences doctrine, the court instructed the jury as follows: "One who aids

7

and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and probable consequences of any criminal act that he knowingly and intentionally aided and abetted. You must determine whether the defendant is guilty of the crime originally contemplated, and, if so, whether the crime charged in Count One was a natural and probable consequence of such originally contemplated crime. [¶] You must determine whether or not the defendant encouraged or facilitated some sort of activity which foreseeably led to the ultimate crime. The defendant need not intend that the ultimate crime be committed, nor need he even personally foresee that it may be committed. It is enough, objectively, [if] it is reasonably foreseeable from the defendant's actions that the ultimate crime may occur."

The court also instructed the jury on principles of premeditation and deliberation. Relevant here, the court instructed the jury, "If you find that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is murder of the first degree." But the court also provided the following instruction: "To constitute a deliberate and premeditated killing, *the slayer* must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, he [or] she decides to and does kill." (Italics added.)

During her closing argument, the prosecutor addressed direct aiding and abetting principles and the natural and probable consequences doctrine as methods of establishing

8

Ayala's culpability for first or second degree murder. The prosecutor's argument addressing each theory spans about two pages of the reporter's transcript.

The prosecutor said this about the natural and probable consequences doctrine:

"Ladies and gentlemen, even if the only thing [Ayala] thinks is going to happen is an armed assault, did he do anything to encourage that armed assault? By standing guard does he do anything? By standing as a look-out does he do anything to help? Even if he stands there silent, he is there as a show of force, and he's there to encourage the commission of the crime.

"Even if the crime escalates to murder, the question for you will be—well, the next question is: well, were other crimes committed by the actual perpetrator? Let's assume he went over there thinking they were just going to display force. That is an armed assault.

"Were other crimes the natural and probable consequence? In other words, were they reasonably foreseeable? If you walk up to a rival intending to face them off, do you walk into rival hood looking for a confrontation?

"Is it reasonably foreseeable in a gang environment that if you've given somebody your gun, that gun could be used or somebody is going to die?

"So you see, ladies and gentlemen, even if you want to give the defendant the benefit of the doubt and say he didn't really know anybody was really gonna die, he knew by walking into [rival gang territory] what the consequences were.

"He knew, and as a result, he stands in the shoes of those who actually pull the trigger because he participates in

something that is so egregiously dangerous that he stands in the shoes of those who actually fire the gun.

"Principals are equally guilty of the same crimes, not only the contemplated crime, but [also] the resulting crime.

[¶] …[¶]

"Because even if the defendant didn't act in a way that was willful, deliberate and premeditated, if his cohort—if his co-principal did, it's all for one, and one for all. He is equally culpable of the crime ultimately committed. That's the law. That's what you're sworn to uphold."

According to the verdict forms, the jury found Ayala guilty of first degree murder but not guilty of attempted murder. The jury also found that "a principal in the offense was armed with a firearm."[5]

### 1.2. *Chiu* and the Natural and Probable Consequences Doctrine

In *Chiu*, the California Supreme Court held aiders and abettors could not be convicted of first degree premeditated murder under a natural and probable consequences theory. The court reasoned, "the connection between the defendant's culpability and the perpetrator's premeditative state is too attenuated to impose aider and abettor liability for first degree murder," "especially in light of the severe penalty involved." (*Chiu*, *supra*, 59 Cal.4th at p. 166.) Thus, following *Chiu*, it is error for a trial court to instruct a jury it can convict a defendant

---

[5] In its instructions, the court defined "principals" as follows: "Those who directly and actively commit or attempt to commit the act constituting the crime" or "[t]hose who aid and abet the commission or attempted commission of the crime."

of first degree murder if it finds he intended to aid and abet a target offense, the natural and probable consequence of which was murder. (*Id*. at pp. 166–167.)[6]

We agree with the parties that the trial court erred when it instructed the jury that it could convict Ayala of first degree premeditated murder under a natural and probable consequences theory. The court's instructions permitted the jury to convict Ayala of first degree murder even if it found he did not harbor a commensurate mental state. (*Chiu*, *supra*, 59 Cal.4th at p. 167.)

When a jury is instructed on two legal theories, one of which is legally erroneous, we must determine whether the error is harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*). (*People v. Aledamat* (2019) 8 Cal.5th 1, 3 (*Aledamat*); see also *Chiu*, *supra*, 59 Cal.4th at p. 167.) In such a case, we presume the legally invalid theory infected the verdict because jurors " ' "are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law … ." ' " (*In re Martinez* (2017) 3 Cal.5th 1216, 1224 (*Martinez*).)

Under *Chapman*, error is harmless if the record establishes beyond a reasonable doubt that the error did not contribute to the verdict. (*Chapman*, *supra*, 386 U.S. at p. 24.) Or, as the Supreme Court explained in *Aledamat*, the appellate court "must reverse the conviction unless, after examining the entire cause, including the evidence, and considering all circumstances, it determines the

---

[6] As we discuss in the portion of our opinion addressing Ayala's appeal, after *Chiu* was decided, the Legislature abolished second degree murder under the natural and probable consequences doctrine. (See *People v. Gentile* (2020) 10 Cal.5th 830, 846 (*Gentile*); see also § 188.)

11

error was harmless beyond a reasonable doubt." (*Aledamat*, *supra*, 8 Cal.5th at p. 13.) "Reversal is required if there is ' " 'a reasonable possibility' " ' that the error may have contributed to the verdict." (*People v. Cardenas* (2020) 53 Cal.App.5th 102, 117, quoting *Chapman*, at p. 24.)

A conviction may be collaterally attacked for *Chiu* error through a petition for a writ of habeas corpus. (*Martinez, supra*, 3 Cal.5th at pp. 1218, 1221–1222.)

### 1.3. The *Chiu* error was prejudicial.

We cannot conclude beyond a reasonable doubt that the natural and probable consequences doctrine didn't contribute to the jury's verdict in this case. As we explain, nothing in the court's instructions, the prosecutor's argument, or the jury's verdict establishes that the jury relied on a legally valid theory when it convicted Ayala of first degree murder. Nor is the evidence of Ayala's guilt under a direct aiding and abetting theory so overwhelming to render the instructional error harmless.

As for the court's instructions, they informed the jury it could find Ayala committed first degree murder as an aider and abettor if it found Ayala either (1) acted with the intent to kill when he aided Castillo or (2) merely acted with the intent to help Castillo commit an armed assault, the natural and probable consequence of which was murder. And although the court instructed the jury that it could convict Ayala of first degree premeditated murder if it found he acted with the intent to kill, the court later instructed the jury that it could also convict Ayala of premeditated murder so long as *the slayer*—Castillo—weighed and considered the question of killing and "decide[d] to and [did] kill." Thus, nothing in the court's instructions told the jury it

12

*must* find Ayala acted with the intent to kill before it could convict him of first degree premeditated murder. In other words, the court's instructions allowed the jury to sustain a first degree premeditated murder conviction even if the jury found Ayala only intended to aid and abet an armed assault, the natural and probable consequence of which was murder.

The prosecutor's argument compounded this problem. The prosecutor focused extensively on the natural and probable consequences doctrine in explaining to the jury how it could convict Ayala of first degree murder. As we noted above, the prosecutor spent about the same amount of time addressing the natural and probable consequences doctrine as she did discussing the general principles of aiding and abetting liability. And the prosecutor's discussion of the natural and probable consequences doctrine wasn't perfunctory—she emphasized that theory as a valid means to convict Ayala of first degree murder, and, more than once, she urged the jury to rely on that theory if it didn't believe the People proved Ayala shared Castillo's intent to kill Muse. And, in wrapping up her discussion of aiding and abetting, the prosecutor reminded the jury that it could convict Ayala of first degree premeditated murder without finding he harbored an intent commensurate with that offense: "even if [Ayala] didn't act in a way that was willful, deliberate and premeditated, … if his co-principal did, it's all for one, and one for all. [Ayala] is equally culpable of the crime ultimately committed." Thus, the prosecutor's argument encouraged the jury to rely on the natural and probable consequences doctrine to convict Ayala of first degree murder. (See *People v. Sanchez* (2022) 75 Cal.App.5th 191, 197 [court's instructions on natural and probable consequences

13

doctrine and prosecutor's argument encouraging jury to apply that doctrine are relevant to whether error is prejudicial].)

Additionally, nothing in the jury's verdict establishes, or even suggests, it didn't rely on the natural and probable consequences doctrine to convict Ayala of murder. The verdict form simply asked the jury to find whether Ayala was guilty of murder and to state which degree of murder it found he committed. And although the jury sustained the firearm allegation, the verdict form only asked the jury to find whether a "principal," not necessarily Ayala, used a firearm in Muse's murder. As we noted above, the court defined a "principal" as anyone who directly commits the crime *or* aids and abets the commission of the crime.

Finally, while there certainly was evidence under which the jury could find Ayala was a direct aider and abettor of Muse's murder—i.e., Ayala acted with the intent to kill—that evidence was not so overwhelming to establish beyond a reasonable doubt that the jury relied on such a theory. For instance, there was no evidence that Ayala actively encouraged Castillo to shoot Muse. Rather, the evidence of Ayala's presence at the murder was just as probative of an intent to support Castillo in committing armed assault as it was probative of an intent to help Castillo commit murder.

Nor does the evidence that Ayala hid the gun and told a fellow gang member that he had shot a rival gang member conclusively show Ayala aided the murder with the intent to kill. While such conduct may reflect an *after-the-fact* consciousness of guilt for participating in Muse's murder, it doesn't establish Ayala's intent at the time Muse was killed. Indeed, the jury could have concluded from that evidence that Ayala simply wanted to

14

increase his reputation within his own gang by taking credit for a shooting he didn't directly perpetrate. And the fact that the People's gang expert testified that gang members often act in groups when confronting rival gang members doesn't tilt the balance in either direction. The expert testified that such confrontations often end in violence. But the expert didn't testify that gang members typically initiate such confrontations to kill, as opposed to assault or otherwise intimidate or disrespect, rival gang members.

The People argue that Ayala's defense at trial—i.e., that he wasn't present when Castillo killed Muse—overwhelmingly establishes Ayala's guilt under a valid theory of murder. According to the People, because Ayala didn't argue at trial that he intended only to aid an armed assault, his defense that he wasn't present for Muse's murder left the jury with only two choices: (1) Ayala intended to participate in a planned murder; or (2) Ayala wasn't involved in Muse's murder. This argument is misguided.

The prosecutor never argued, and nothing in the court's instructions suggested, that if the jury rejected Ayala's defense, it necessarily had to find he intended to aid Castillo in killing Muse. Instead, as explained above, the prosecutor argued at length that if the jury found Ayala participated in the killing, it could convict him of first degree murder even if "the only thing he thinks is going to happen is an armed assault." Thus, if the jury rejected Ayala's defense (which it clearly did) it was still left with the option of convicting Ayala of murder under either a direct aiding and abetting theory or the natural and probable consequences doctrine. In other words, Ayala's claim at trial that he wasn't present for Muse's murder did not remove from the

jury's consideration the natural and probable consequences doctrine as a means of establishing Ayala's culpability for first degree murder.

In short, after reviewing the entire record—including the court's instructions, the prosecutor's argument, the jury's verdict, and the evidence—we cannot conclude beyond a reasonable doubt that the court's instructions on the natural and probable consequences doctrine did not contribute to the jury's verdict. (*Aledamat*, *supra*, 8 Cal.5th at p. 13; *Chapman*, *supra*, 386 U.S. at p. 24.) We therefore must reverse Ayala's murder conviction.

## 2. Ayala's Appeal (B311702)

In his appeal, Ayala contends, and the People agree, that the court (Judge Mitchell) erred when it denied his resentencing petition under section 1170.95 without issuing an order to show cause. We agree with the parties.

S.B. 1437 limited accomplice liability for murder under the natural and probable consequences doctrine and the felony murder rule. Under prior California law, every accomplice to an enumerated felony could be convicted of first degree murder if a death occurred during the commission of that felony—regardless of whether the accused killed or intended to kill. (See *People v. Dillon* (1983) 34 Cal.3d 441, 462–472.) Similarly, "a defendant who aided and abetted a crime, the natural and probable consequence of which was murder, could be convicted not only of the target crime but also of the resulting murder"—regardless of whether he acted with malice aforethought. (*In re R.G.* (2019) 35 Cal.App.5th 141, 144.)

Now, a person generally may be convicted of murder only if he acted with malice aforethought. (§ 188, subd. (a)(3); *Gentile*, *supra*, 10 Cal.5th at p. 849.) Thus, section 188 now "bars a

16

conviction for first or second degree murder under a natural and probable consequences theory." (*Gentile*, at p. 846.) And, while S.B. 1437 didn't completely abrogate the felony murder rule, that rule applies only if the defendant: (1) was the actual killer; or (2) with the intent to kill, aided and abetted the actual killer's commission of murder; or (3) acted as a "major participant" in a felony listed in section 189 and acted with "reckless indifference to human life." (§ 189, subd. (e), as amended by Stats. 2018, ch. 1015, § 3; § 188, subd. (a)(3), as amended by Stats. 2018, ch. 1015, § 2.)

In addition to changing the law of murder prospectively, S.B. 1437 gave people who have been convicted of murder under one of the now-invalid theories the opportunity to petition for resentencing under section 1170.95. (Stats. 2018, ch. 1015, § 4; Stats. 2022, ch. 58, § 10.) In relevant part, section 1170.95 provides that a person convicted of "murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, … may file a petition with the court that sentenced the petitioner to have the petitioner's murder … conviction vacated and to be resentenced on any remaining counts" if (1) the complaint or information filed against them "allowed the prosecution to proceed under a theory of … murder under the natural and probable consequences doctrine"; (2) the petitioner was convicted of murder "following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted" of murder; and (3) the "petitioner could not presently be convicted" of murder "because of changes to Section 188 or 189." (§ 1170.95, subd. (a).)

If the petitioner files a facially sufficient petition, the court must appoint counsel. (§ 1170.95, subd. (b)(3).) After allowing the parties to file briefs, the court must hold a hearing to "determine whether the petitioner has made a prima facie … showing that [he] is entitled to relief." (*Id.*, at subd. (c).)

In *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), the California Supreme Court clarified the scope of the trial court's inquiry at the prima facie stage under section 1170.95, subdivision (c). As the Supreme Court explained, the inquiry "is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes [the] petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citations.]" (*Lewis,* at p. 971.) While the court may review the record of conviction, it "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.] … [T]he 'prima facie bar was intentionally and correctly set very low.' " (*Id*. at p. 972.) In other words, a denial at this stage " 'is appropriate only if the record of conviction demonstrates that "the petitioner is ineligible for relief as a matter of law." ' " (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101 (*Ervin*).)

If the petitioner makes a prima facie showing for relief, the court must "issue an order to show cause" and "hold a hearing to determine whether to vacate the murder … conviction and to recall the sentence." (§ 1170.95, subds. (c) & (d)(1).) "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder … under

18

California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. … The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. A finding that there is substantial evidence to support a conviction for murder … is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).)

"If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1170.95, subd. (d)(3).) "The petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes if the petitioner is entitled to relief pursuant to this section, murder or attempted murder was charged generically, and the target offense was not charged." (*Id.*, at subd. (e).)

Whether a petitioner has made a prima facie showing of eligibility for relief under section 1170.95 is a " 'purely legal conclusion, which we review de novo.' " (*Ervin, supra,* 72 Cal.App.5th at p. 101.)

The parties agree, and so do we, that the court erred when it denied Ayala's resentencing petition without issuing an order to show cause and holding an evidentiary hearing. In his petition, Ayala alleged: (1) he was prosecuted for murder under a natural

19

and probable consequences or a felony murder theory; (2) he was convicted of murder under one of those theories; and (3) he could not now be convicted of murder because of changes made to sections 188 and 189 by S.B. 1437. Ayala's petition is sufficient on its face under section 1170.95. (§ 1170.95, subds. (a) & (b).)

The court denied Ayala's petition without issuing an order to show cause, however, concluding: (1) there was strong evidence in the record showing Ayala shared Castillo's intent to kill Muse; (2) the jury necessarily found Ayala harbored an intent to kill when it found him guilty of first degree premeditated murder; and (3) in any event, Ayala was a major participant in the murder and acted with reckless indifference to human life.

The court's reasoning was flawed for two reasons. First, as the Supreme Court explained in *Lewis*, trial courts should not engage in " 'factfinding involving the weighing of evidence or the exercise of discretion' " when evaluating whether a petitioner has made a prima facie showing for relief under section 1170.95. (*Lewis*, *supra*, 11 Cal.5th at pp. 971–972.) Thus, whether there was strong evidence in the record from which the jury could infer that Ayala intended to kill or was a major participant in the murder and acted with reckless indifference to human life is immaterial at the prima facie stage of evaluating a resentencing petition under section 1170.95.[7]

Second, that the jury found Ayala guilty of first degree premeditated murder does not establish, as a matter of law, that

---

[7] We also note that whether a petitioner was a major participant in the underlying felony who acted with reckless indifference to human life arises only in a felony-murder case and Ayala was not tried or convicted on a felony-murder theory. (See *People v. Strong* (2022) 13 Cal.5th 698, 703.)

he harbored an intent to kill or was otherwise ineligible for resentencing relief. As we explained above, the court instructed the jury it could find Ayala guilty of first degree murder even if it found Muse's killing was the natural and probable consequence of another crime that Ayala intended to aid and abet. Additionally, when defining premeditated murder, the court instructed the jury that it need only find "the slayer" weighed and considered the question of killing and, having in mind the consequences, "decid[ed] to and [did] kill." And finally, the prosecutor argued at length that the jury could convict Ayala of first degree murder even if it found only that he intended to aid an armed assault, the natural and probable consequence of which was murder. The court's instructions, and the prosecutor's arguments, at trial therefore allowed the jury to convict Ayala of first degree murder under a natural and probable consequences theory.

Because nothing in the record establishes, as a matter of law, that Ayala was convicted of murder under a currently valid theory of liability, the court erred when it found Ayala did not make a prima facie showing that he is eligible for relief under section 1170.95. (See *Ervin*, *supra*, 72 Cal.App.5th at p. 104 [court erred in summarily denying section 1170.95 petition because "the jury potentially found [the petitioner] guilty of murder as an aider and abettor" under a now invalid theory of liability].) Accordingly, we reverse the order denying Ayala's resentencing petition.[8]

---

[8] Because we are reversing the order denying Ayala's resentencing petition, we need not address his argument that the court erred in denying his *Marsden* motion. We therefore deny as moot Ayala's request to augment the record with a copy of a letter from Ayala's

## DISPOSITION

We grant Ayala's habeas petition, reverse his murder conviction and the order denying his resentencing petition, and remand the matter for further proceedings. On remand, the People shall have the choice of retrying Ayala for first degree murder under a valid theory of liability or accepting a reduction of Ayala's murder conviction to second degree murder. (*Chiu*, *supra*, 59 Cal.4th at p. 168.) If the People choose to retry Ayala, the court shall dismiss the section 1170.95 resentencing petition as moot. The changes made to sections 188 and 189 by S.B. 1437 shall apply to any retrial. If the People accept a reduction of Ayala's conviction to second degree murder, the court shall issue an order to show cause on Ayala's resentencing petition and conduct an evidentiary hearing under section 1170.95, subdivision (d), at which the People will bear the burden of proving beyond a reasonable doubt that Ayala is ineligible for relief. (§ 1170.95, subd. (d)(3).)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.                                   EGERTON, J.

---

former counsel whom the court appointed to represent Ayala in the section 1170.95 proceedings.